UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDSEY HOLZHAUER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-1037-JES-JEH |
| ) | |
| TOWN OF NORMAL, a municipal ) | |
| corporation, and Normal Police Officers ) | |
| BRIAN WILLIAMS, TIM EDMIASTON, ) | |
| JIM FERGUSON, and RICK BLEICHNER, ) | |
| ) | |
| Defendants. ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendants', Town of Normal ("Normal" or "Town"), Tim Edmiaston, Jim Ferguson, and Rick Bleichner ("Defendants") Motion to Dismiss (ECF No. 17) and Defendant Brian Williams' Motion to Join (ECF No. 19). For the reasons set forth below, the Court DENIES Defendants' Motion to Dismiss and GRANTS Defendant's Motion to Join.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint (ECF No. 1), which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

On November 25, 2019, there was a medical emergency at Plaintiff's home involving her husband. Defendant Williams responded to the emergency call, and he was one of the first responders at the scene. Defendant Williams searched Plaintiff's home, and during this time seized and converted about $12,000 in cash that belonged to Plaintiff. Plaintiff discovered the money was missing shortly after Defendant Williams

1

left the scene, and she immediately notified the Normal Police Department. Defendant Edmiaston told Plaintiff he reviewed the body cam video from the officers who were at home, and he assured Plaintiff that no one from the Normal Police Department took the money. Plaintiff told Defendant Edmiaston that she would review the camera video from her own system. Shortly after learning Plaintiff had her own camera video, a Normal police officer came to Plaintiff's home and took Plaintiff's complaint. *See* Doc. 1, at ¶ 9-18.

That night, Plaintiff received a phone call from an unfamiliar number, but did not answer. The next day, Plaintiff received a call from the same number. Plaintiff answered the call and believed the phone calls were made by Defendant Williams. The caller did not reveal his identity to Plaintiff. During the phone call, the anonymous caller told Plaintiff he knew she had video of the theft and knew she made a complaint about the stolen money. Further, he said he could get the money returned to Plaintiff if she stopped talking to the police. The caller also mentioned the return of the money would help Plaintiff's minor children. *See* Doc. 1, at ¶ 9-23.

Plaintiff feared for the safety of her and her children, and she gathered her children and left the house. Subsequently, Plaintiff contacted the Illinois State Police ("ISP"). When the Normal Police Department found out Plaintiff contacted ISP, a detective from Normal Police Department contacted Plaintiff and told her it would be in her best interest to not involve the ISP. After a phone call with the detective, a meeting was scheduled between Plaintiff and Defendant Bleichner, the Chief of the Normal Police Department. *See* Doc. 1, at ¶ 24-27.

At the meeting, Defendant Bleichner implied that a family member of Plaintiff's stole the money, not Defendant Williams. Defendant Ferguson implored Plaintiff to drop the ISP investigation. At the meeting, Plaintiff felt concerned about her and her family's safety and felt pressured to drop the ISP investigation, but Plaintiff did not do so. An anonymous caller contacted Plaintiff again, and Plaintiff agreed to go to a gas station in Pontiac where the caller said her money would be returned. *See* Doc. 1, at ¶ 25-33.

The ISP conducted a sting operation on December 1, 2019. During the sting operation, ISP officers witnessed and recorded the encounter at the gas station. Defendant Williams was arrested at the scene and Plaintiff's money was recovered. The money has not been returned to Plaintiff. *See* Doc. 1, at ¶ 34-38.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**DISCUSSION**

Plaintiff's Complaint contains four counts: Count I is against Brian Williams for unreasonable seizure under 42 U.S.C. § 1983; Count II is against the individual Defendants for civil conspiracy under § 1983; Count III is a state law claim for intentional infliction of emotional distress against all individual Defendants; and Count IV is a state law indemnification claim against the Town of Normal under 745 ILCS 10/902. Defendants Town of Normal, Tim Edmiaston, Jim Ferguson, and Rick Bleichner move pursuant to Rule 12(b)(6) to dismiss Counts II, III, and IV against them for failure to state a claim upon which relief can be granted. Defendant Williams moves to join Defendants' 12(b)(6) Motion to Dismiss Counts II – IV.

        1.  **Count II Civil Conspiracy**

**A. Plaintiff Has Sufficiently Alleged a Meeting of the Minds**

Defendants move to dismiss Plaintiff's § 1983 conspiracy claim. Under 42 U.S.C. § 1983, a conspiracy claim requires a plaintiff to establish (a) an agreement or meeting of the minds between two or more defendants to violate the plaintiff's constitutional rights, and (2) an overt act in furtherance of the conspiracy which results in a violation of a federal constitutional right. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Plaintiff is not required to make direct allegations of a conspiracy but can allege circumstances that add up to a "plausible account of conspiracy." *Geinosky v. City of Chicago,* 675 F.3 743, 749 (7th Cir. 2012). It is sufficient in pleading a conspiracy "merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Moreover, "if several members of the same police unit allegedly

4

acted in the same inexplicable way against a plaintiff on many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." *See Geinosky*, 675 F.3d at 759.

Plaintiff has met this standard. Defendants argue that Plaintiff's conspiracy allegations are "conclusory only, and do not raise any inference of an agreement among the defendants." Plaintiff, however, is not required at this point in the pleading to make direct allegations of a conspiracy. Here, Plaintiff has sufficiently identified the parties, purpose, and approximate date of the agreement to form a conspiracy clear to put the Defendants on notice of the charges.

As an initial matter, Plaintiff has identified the parties involved. The parties include Defendant Williams, who was one of the first responders and who conducted the seizure, and the Defendants who tried to cover up the ongoing illegal seizure and to intimidate Plaintiff into not contacting the ISP. The purpose of the conspiracy was to dissuade Plaintiff from involving an outside agency to investigate the misconduct of a fellow Town of Normal police officer and to cover up the illegal ongoing seizure of her property. Finally, Plaintiff has sufficiently identified the approximate date of the agreement to form a conspiracy. The timeframe begins when Plaintiff first reported the theft of her property to Defendant Edmiaston. Shortly after, Plaintiff began to receive "anonymous" calls, which included threats against Plaintiff's children if she were to involve the ISP. The timeframe continues through the meetings she had with Defendants, up until the sting operation was conducted.

These circumstances add up to a "plausible account of conspiracy." *See Geinosky*, 675 F.3d at 759. After Plaintiff discovered her property missing after a search by Defendant

5

Williams, Plaintiff reported it to the Normal Police Department. Shortly after reporting the theft, Defendant Williams was made aware of the report and tried to dismiss the investigation. Defendant Edmiaston, Ferguson, and Bleichner told Plaintiff that the money had not been taken by a Normal police officer and tried to dissuade Plaintiff from contacting an outside law enforcement agency to investigate the instance. From these facts, it is plausible that the Defendants had a meeting of the minds to act together to both cover up the illegal seizure of Plaintiff's property and to keep Plaintiff from reporting the incident to the ISP. Although Plaintiff is unable to detail the explicit agreements of the Defendants in the conspiracy, Plaintiff is able to demonstrate a pattern of harassment by several officers over a period of time. Therefore, Plaintiff has met the pleading standards for her conspiracy claim.

### B.  Plaintiff Has Sufficiently Pleaded an Underlying Constitutional Violation

If there is no underlying constitutional violation, Plaintiff's civil conspiracy claim must fail as a matter of law. Under § 1983, recovery is only authorized for a conspiracy to violate a clearly established right, not the conspiracy itself.  *Kunz v. City of Chicago*, 234 F. Supp. 2d 820, 825 (N.D. Ill. 2002). The First and Fourteenth Amendments to the United States Constitution guarantee the right to seek legal relief for asserted injuries that have a reasonable basis in fact and law. U.S. CONST. amend. I. Efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim under § 1983. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

In addition to her Fourth Amendment claims, which Defendants do not challenge here, Plaintiff has sufficiently alleged her First Amendment rights were violated when the Defendants tried to impede Plaintiff's access to the ISP. Defendants argue Plaintiff

cannot allege that there is a constitutional right to not have a police officer request that an investigation remain with his department, so her conspiracy claim fails. Plaintiff, however, argues the Defendants' conduct of intimidating and attempting to prevent Plaintiff from reporting Defendant Williams' misconduct was what violated her First Amendment rights. Here, Plaintiff has alleged the Defendants were not simply requesting that the investigation remain with the Normal Police Department but were engaged in conduct meant to dissuade and intimidate Plaintiff into not contacting the ISP. Prior to learning that Plaintiff had her own camera video system in her house, Defendant Edmiaston told her he reviewed the body cam video from the officers who were at her home and he saw nothing suspicious. After learning she had her own camera, Plaintiff received a phone call from an unfamiliar number who said he could get the money returned if she talked talking to the police. Further, the caller mentioned that the return of the money would help Plaintiff's minor children. Defendant Bleichner and Defendant Ferguson then met with Plaintiff and echoed Defendant Edmiastons' belief that a family member of Plaintiff had stolen the money, without further investigating the incident. Defendants continued to implore Plaintiff to drop the ISP investigation.

Here, Plaintiff has alleged Defendants were not merely requesting Plaintiff keep the investigation within the department but were engaged in continuous conduct meant to intimidate and impede Plaintiff's access to an outside agency. Therefore, Plaintiff has properly pleaded a violation of her First Amendment right and her conspiracy claim.

### C. Plaintiff's Conspiracy Claim is Not Barred by the Intra-Corporate Conspiracy Doctrine

Plaintiff's claim is not barred by the intra-corporate conspiracy doctrine because the doctrine does not extend to § 1983 cases. Defendants argue that Plaintiff's conspiracy

7

claim is barred by the intra-corporate conspiracy doctrine because "a conspiracy claim cannot exist solely between members of the same entity." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184, F.3d 623, 632 (7th Cir. 1999). Plaintiff, however, argues that Defendants overlook the Seventh Circuit's decision in *Geinosky,* where the Seventh Circuit reversed the district court's dismissal of the conspiracy claim, finding the plaintiff had plead a conspiracy claim against all defendants, including the City of Chicago. Therefore, *Payton* does not stand for the position that the doctrine extends to § 1983 cases. Moreover, even if the claim was barred by the intra-corporate conspiracy doctrine, there is an exception that exists for "egregious circumstances." *Hartman v. Board of Trustees of Community College*, 4 F.3d 465, 471 (7th Cir. 1993). The allegations of illegal seizure of $12,000 dollars by a police officer, the subsequent covering up of the incident, the intimidating Plaintiff from seeking an outside agency's help, and the threatening of her minor children are egregious circumstances. Therefore, Plaintiff's claim is not barred by the intra-corporate conspiracy doctrine.

    2.   **Count III Intentional Infliction of Emotional Distress**

To prevail on a claim of Intentional Infliction of Emotional Distress ("IIED"), Plaintiff must allege that (a) the Defendants' conduct was extreme and outrageous; (b) the Defendants knew there was a high probability that their conduct would cause severe emotional distress; and (c) the conduct in fact caused severe emotional distress. *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th. Cir. 2010). In order for the conduct to be "extreme and outrageous," the defendants' conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable

in a civilized community." *Id.* The "extreme and outrageous character of a defendant's conduct may arise, not so much from what he says or does, but from the defendant's improper use of a position of power which gives him the ability to adversely affect the plaintiff's interests." *Id.* In regard to the third prong, an action may lie "only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.*

### A. Plaintiff has Sufficiently Plead the Defendants' Conduct Was Extreme and Outrageous

Taking Plaintiff's allegations at face value, Plaintiff has sufficiently pleaded all three elements of IIED. As an initial matter, Plaintiff has sufficiently pleaded the Defendants' conduct throughout the investigation was extreme and outrageous. In this case, the incident arose when the Plaintiff's husband needed a medical emergency response. *See* Doc. 1, at ¶ 9-18. While responding to the emergency incident, the police officer at the scene illegally seized twelve thousand dollars from Plaintiff. *Id.* When Plaintiff noticed the money was missing, the Defendants suggested that the body cam videos showed nothing suspicious and offered the alternative theory that Plaintiff's family member must have stolen the money. *Id.* Further, after learning that Plaintiff had her own video system, she received an "anonymous" phone call from a person who had knowledge of the incident threatened her minor children if she were to report the incident to an outside agency. This pattern of intimidation and attempted coercion continued when the Chief of Police implored Plaintiff to not contact ISP. *Id.* The various abuses of power by the Defendants to conceal the crime and protect the individual police officer

9

and Normal Police Department while threatening the safety of Plaintiff's minor children constitute extreme and outrageous conduct.

**B. Plaintiff has Sufficiently Pleaded the Defendants Knew There Was a High Probability That Their Conduct Would Cause Severe Distress**

Second, Plaintiff has sufficiently pleaded the Defendants knew that there was a high probability that their conduct would cause severe distress. As an initial matter, Defendant Williams either knew or should have known that illegally stealing a large sum of money from the Plaintiff would likely cause Plaintiff severe distress. Here, the Defendants' main goal of their conduct was to cover up an illegal seizure by a fellow police officer and to intimidate, threaten, and persuade the Plaintiff to not contact the ISP. Because the goal was to intimidate and dissuade the Plaintiff, the Defendants must have known that their conduct would cause severe distress to the Plaintiff, otherwise they would have used a different tactic.

**C. The Distress Defendants Inflicted Is So Severe that "No Reasonable Man Could Expect to Endure It**

Third, Plaintiff has sufficiently pleaded that the distress inflicted is so severe that "no reasonable man could expect to endure it." Plaintiff had $12,000 taken from her home by a police officer who was responding to an emergency call. The Defendants repeatedly tried convincing Plaintiff that it could not have been a police officer, and it must have been her family member that stole her property. Plaintiff was then subjected to multiple "anonymous" calls where the caller threatened the safety of

Plaintiff and her minor children. Plaintiff was so afraid for her safety, she had to flee her home with her children. Finally, Plaintiff had to contact ISP and conduct a Sting Operation at a gas station to prove that she was being coerced. The theft of property followed by numerous intimidation tactics and threats caused stress that no reasonable man could expect to endure. Therefore, Plaintiff sufficiently alleged all three elements of IIED.

### 3. Count IV Indemnification

Plaintiff's indemnification count should stand. Under the Illinois Tort Immunity Act, 745 ILCS 10/9-102, municipalities are directed to pay compensatory damage judgments for torts committed by their employees while acting within the scope of their employment. Defendants argue that because Plaintiff does not have a viable claim against the individual defendant officers, that there can be no claim to lie against the employing public entity. Plaintiff, however, has sufficiently pleaded a cognizable claim against the individual Defendants. Therefore, Plaintiff's indemnification claim should not be dismissed on this basis.

## CONCLUSION

For the reasons set forth above, the Defendants 'Motion to Dismiss for is DENIED and the Defendant's Motion to Join is GRANTED.

Signed on this 2nd day of September, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge
